UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTOS ALEXIS GONZALEZ ESQUIVEL, <br><br> Petitioner, <br><br> v. <br><br> CHRISTOPHER CHESTNUT, et al., <br><br> Respondents. | Case No.: 1:25-cv-01353-SKO (HC) <br><br> ORDER DIRECTING CLERK OF COURT TO ASSIGN DISTRICT JUDGE TO CASE <br><br> FINDINGS AND RECOMMENDATIONS TO DENY RESPONDENT'S MOTION TO DISMISS AND GRANT PETITION <br><br> [Docs. 1, 9] <br><br> [21-DAY OBJECTION DEADLINE] |

Petitioner is an immigration detainee proceeding with counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Petitioner filed the instant petition on October 9, 2025. (Doc. 3.) On November 26, 2025, Respondent filed a motion to dismiss the petition. (Doc. 9.) On December 10, 2025, Petitioner filed an opposition. (Doc. 11.)

Petitioner challenges his continued detention by the Bureau of Immigration and Customs Enforcement ("ICE"). He claims his prolonged detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. He claims he should be immediately

1

released, or alternatively, provided a bond hearing before an immigration judge ("IJ") at which the Government must justify his continued detention by clear and convincing evidence.

For the reasons discussed below, the Court will recommend Respondent's motion to dismiss be DENIED, the petition be GRANTED, and Respondents be DIRECTED to provide Petitioner with a bond hearing before an immigration judge.

## I.    BACKGROUND

Petitioner is a native and citizen of Mexico. (Doc. 10-1 at 2.) He entered the United States on an unknown date without inspection. (Doc. 10-1 at 5.) On May 2, 2012, Petitioner came to the attention of Immigration and Customs Enforcement ("ICE") after Petitioner was incarcerated in Sonoma County Jail for violations of Cal. Penal Code § 459 (burglary) and § 466 (possession of burglary tools). (Doc. 10 at 2.) On May 4, 2012, Petitioner was placed in removal proceedings with the issuance of a Notice to Appear charging him as an alien present without admission or parole and charging him with removability under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i). (Doc. 10 at 2.) On May 7, 2012, the Department of Homeland Security ("DHS") released Petitioner on a $15,000 bond. (Doc. 10 at 2.)

On September 11, 2012, Petitioner appeared at his first master calendar hearing. (Doc. 10 at 2.) The IJ sustained the removal charges and ordered Petitioner removed to Mexico. (Doc. 10 at 2.) On September 20, 2013, the IJ granted Petitioner's motion to administratively close the case. (Doc. 10 at 3.)

On March 5, 2025, after DHS conducted an initial custody determination, DHS apprehended Petitioner during a check-in based on his criminal history. (Doc. 10 at 3.) Among other criminal history, on August 28, 2024, Petitioner was convicted of violating Cal. Penal Code § 273.5(A) (infliction of corporal injury on a spouse) and Cal. Vehicle Code § 14601.2(A) (driving on a suspended license/DUI special violation). (Doc. 10 at 3.)

On March 7, 2025, DHS filed a motion to re-calendar Petitioner's previously administratively closed case. (Doc. 10 at 3.) On March 12, 2025, the IJ granted the motion and rescheduled the master calendar hearing for March 27, 2025. (Doc. 10 at 3.)

On March 27, 2025, at the master calendar hearing, Petitioner filed a motion to continue the hearing to file applications for relief. (Doc. 10 at 3.) The IJ granted Petitioner's request and continued the hearing to May 7, 2025. (Doc. 10 at 3.)

On April 7, 2025, Petitioner filed a bond redetermination request. (Doc. 10 at 3.) On April 17, 2025, Petitioner, through counsel, withdrew his bond request without prejudice. (Doc. 10 at 3.)

On May 1, 2025, Petitioner filed a second bond redetermination request. (Doc. 10 at 3.) On May 8, 2025, the IJ held a bond hearing and denied Petitioner's request, finding Petitioner did not meet his burden to establish he was not a danger to the community. (Doc. 10 at 3.) Petitioner did not appeal the decision.

On May 7, 2025, at the master calendar hearing, Petitioner again requested a continuance to file an application for relief from removal. (Doc. 10 at 3.) The IJ granted the request and reset the hearing to June 18, 2025. (Doc. 10 at 3.) The hearing was rescheduled by the IJ to June 26, 2025. (Doc. 10 at 4.)

At the June 26, 2025, master calendar hearing, Petitioner requested a further continuance to file supplemental documents and file another application for relief from removal. (Doc. 10 at 4.) The IJ granted the request and continued the hearing to August 14, 2025. (Doc. 10 at 4.)

On August 14, 2025, at the rescheduled master calendar hearing, Petitioner filed another request for continuance to file an additional application for removal. (Doc. 10 at 4.) The IJ granted the request and continued the hearing to October 16, 2025. (Doc. 10 at 4.)

At the October 16, 2025, master calendar hearing, the IJ set the merits hearing for November 5, 2025. (Doc. 10 at 4.)

At the November 5, 2025, merits hearing, the IJ conducted a full evidentiary hearing and denied Petitioner's application for relief, finding Petitioner ineligible for asylum, withholding of removal and relief under the Convention Against Torture. (Doc. 10 at 4.) The IJ ordered Petitioner removed to Mexico. (Doc. 10 at 4.) Petitioner's appeal was due by December 5, 2025.

/////

/////

/////

3

## II.    DISCUSSION

### A.  Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020) (citing Singh v. Holder, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention. See Demore v. Kim, 538 U.S. 510, 517 (2003).

### B.  Sections 1226(a) and 1226(c)

The parties acknowledge that Petitioner has been detained for over 10 months after DHS apprehended Petitioner during a routine check-in. Respondent contends Petitioner was arrested and detained pursuant to 8 U.S.C. § 1226(c) due to his prior criminal history.  Petitioner contends he is entitled to a bond hearing because he is being detained under § 1226(a), and even assuming § 1226(c) applies to him, he is entitled to a bond hearing because detention has become so unreasonably prolonged as to violate his Fifth Amendment due process rights. As discussed below, whether Petitioner is being detained under § 1226(a) or (c), he should be provided with a bond hearing.

In Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir.2008), the Ninth Circuit considered the prolonged detention of aliens under § 1226(a) while seeking direct judicial review of their administratively final orders of removal. The petitioner in that case, a legal permanent resident, had been detained in 2001, when the government commenced removal proceedings against him based on his having been convicted of two crimes involving moral turpitude. See id. at 944-45. The petitioner remained in detention for the next seven years. During that time, Petitioner was in removal proceedings before the immigration court, BIA, and the Ninth Circuit. Id. The Ninth Circuit concluded that, "as a matter of statutory interpretation," "§ 1226(a) requires the Attorney General to provide aliens with a bond hearing before an immigration judge to determine the necessity of their ongoing detention." See id. at 950-52. The Ninth Circuit concluded that "an alien is

entitled to release on bond unless the 'government establishes that he is a flight risk or will be a danger to the community.'" Id. at 951 (quoting Tijani v. Willis, 430 F.3d 1241, 1242 (9th Cir.2005)).

On the other hand, section 1226(c) states that the Attorney General "shall take into custody any alien who" falls into one of the enumerated categories involving criminal offenses and terrorist activities. 8 U.S.C. § 1226(c)(1). Section 1226(c)(2) provides that the Attorney General may release an alien described in § 1226(c)(1) "'*only if* the Attorney General decides' both that doing so is necessary for witness-protection purposes and that the alien will not pose a danger or flight risk." Jennings v. Rodriguez, 583 U.S. 281, 303 (2018) (citing 8 U.S.C. § 1226(c)(2)) (emphasis in original).  In Jennings, the Supreme Court held that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'"  Id. (citing 8 U.S.C. § 1226(a)).  Further, the Supreme Court noted that "[b]y expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmative prohibition on releasing detained aliens under any other conditions."  Id. at 304.  Thus, the Supreme Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." Id.

In support of his argument that § 1226(a) applies, Petitioner points out that an immigration judge denied release on bond on May 7, 2025, specifically finding that "Petitioner did not meet his burden to establish that he is not a danger to the community." (Doc. 10-1 at 31.) Petitioner is correct that if he were being held pursuant to § 1226(c), no such bond hearing would be available. Under § 1226(c)(1), *only if* the Attorney General determined that Petitioner's release was necessary for witness-protection purposes could an alien be released on bond. This lends weight to Petitioner's argument that he is being held under § 1226(a), since Respondents are treating him as such.

Respondent points to Petitioner's lengthy criminal history in support of its argument that Petitioner is being held under § 1226(c). Petitioner sustained convictions for burglary and possession of burglary tools in 2012, but was released on bond. (Doc. 10-1 at 29.) Petitioner then sustained numerous convictions which were all misdemeanors. (Doc. 10-1 at 29.)  None of the convictions appear to meet the requirements of § 1226(c)(1). Therefore, it appears Petitioner is being detained

under § 1226(a) and entitled to a bond hearing. Even if Petitioner were being held pursuant to §1226(c), as discussed below, the Court finds Petitioner should be given a bond hearing.

C. Prolonged Detention under § 1226(c)

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," Reno v. Flores, 507 U.S. 292, 306 (1993), and "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," Zadvydas v. Davis, 533 U.S. 678, 690 (2001). The Supreme Court nevertheless has recognized that "[d]etention during deportation proceedings is a constitutionally permissible part of [the deportation] process." Demore v. Kim, 538 U.S. 510, 531 (2003); see also Carlson v. Landon, 342 U.S. 524, 538 (1952) ("[d]etention is necessarily a part of this deportation procedure").

In Zadvydas, 533 U.S. 678, the Court considered a due process challenge to detention of aliens under 8 U.S.C. § 1231, which governs detention following a final order of removal. The Court in Zadvydas read § 1231 to authorize continued detention of an alien following the 90-day removal period for only such time as is reasonably necessary to secure the alien's removal. Id. at 699. Zadvydas is materially different from the present case.  In Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was "no longer practically attainable." Id. at 690. The Court observed that where, as there, "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Id. (internal quotation marks and citation omitted).  Zadvydas distinguished § 1231 from § 1226 on these very grounds, noting that "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." Id. at 697. Here, however, removal is practically attainable. As the Supreme Court noted in Jennings, "detention under § 1226(c) has a definite termination point: the conclusion of removal proceedings." Jennings, 583 U.S. at 304.

In Demore v. Kim, a lawful permanent resident alien challenged the no-bail provision of the Immigration and Nationality Act ("INA"), contending his six-month detention violated due process because he had not been provided an individualized bond hearing. 538 U.S. 510. The Supreme Court

rejected this claim, observing first that Congress, in its "broad power over naturalization and immigration proceedings," "regularly makes rules that would be unacceptable if applied to United States citizens." Id. at 521 (quoting Mathews v. Diaz, 426 U.S. 67, 79-80 (1976)). Additionally, detention pending removal necessarily serves the purpose of preventing aliens from fleeing prior to or during removal proceedings. Id. at 527-28. The Court also noted that detention under § 1226(c) has a definite termination point. Id. at 529. Although the Supreme Court did not specify an outer limit as to what constitutes a permissible detention period, it acknowledged that "the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases ... and about five months in the minority of cases in which the alien chooses to appeal." Id. at 530. Nevertheless, the majority held that six months did not run afoul of the due process clause in part because the delayed proceedings were the result of the alien's own requests. Id. at 530–31.

In analyzing whether prolonged detention violates due process, many courts have looked to Justice Kennedy's concurrence in Demore, which clarified that, "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." Id. at 532 (Kennedy, J., concurring). Numerous circuit and district courts, including this Court, have found that unreasonably long detention periods may violate the due process clause. See, e.g., Rodriguez v. Marin ("Rodriguez IV"), 909 F.3d 252, 256 (9th Cir. 2018) (the Ninth Circuit asserted "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional...."); Diop v. ICE/Homeland Sec., 656 F.3d 221, 235 (3d Cir. 2011) (detention of an alien for a period of nearly three years without further inquiry into whether it was necessary to ensure his appearance at the removal proceedings or to prevent a risk of danger to the community, was unreasonable, and, therefore, a violation of the Due Process Clause"); Diep v. Wofford, 1:24-cv-01238-SKO (HC) (E.D. Cal. Feb. 25, 2025); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025); Jensen v. Garland, 2023 WL 3246522 (C.D.Cal. 2023); M.T.B. v. Byers, 2024 WL 3881843 (E.D. Ky. 2024); Sanchez-Rivera v. Matuszewski, 2023 WL 139801 (S.D. Cal. 2023); Banda v. McAleenan, 385 F.Supp.3d 1099 (W.D. Wash. 2019).

The Ninth Circuit has also noted that many courts have applied the Mathews[1] test in considering due process challenges in the immigration context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022). However, the Supreme Court, when confronted with constitutional challenges to immigration detention, has not resolved them through express application of Mathews. See, e.g., Demore, 538 U.S. at 523, 526–29; see also Dusenbery v. United States, 534 U.S. 161, 168, 122 S.Ct. 694, 151 L.Ed.2d 597 (2002) ("[W]e have never viewed Mathews as announcing an all-embracing test for deciding due process claims."). Nevertheless, several district courts in the Ninth Circuit including this Court have employed the Mathews test in the context of evaluating whether due process entitles a petitioner to a bond hearing. See, e.g., Jensen v. Garland, 2023 WL 3246522, at *4 (C.D. Cal. 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *3 (C.D. Cal. 2021); Jimenez v. Wolf, 2020 WL 510347, at *3 (N.D. Cal. 2020); Riego v. Scott, 2025 WL 660535 (E.D. Cal. 2025).

The Ninth Circuit has also noted the common use of the Mathews test and assumed (without deciding) that it applies to due process claims in the immigration detention context. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Thus, the Court finds application of the Mathews test in this case appropriate.

Under the Mathews test, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." Mathews, 424 U.S. at 334–35.  "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

In the first factor, the Court evaluates Petitioner's private interest in being free from detention against the government's stated interests in protecting the public from a risk of danger and any risk of flight to avoid removal. Petitioner has been detained over 10 months. This period is greater than the

---

[1] Mathews v. Eldridge, 424 U.S. 319 (1976).

six-month presumptively reasonable period set forth in Zadvydas, and will likely be twice as long once this case is resolved. 533 U.S. at 701.

In Rodriguez Diaz v. Garland, the Ninth Circuit stated that "in evaluating the first prong of the Mathews analysis, it is not sufficient to simply count the months of detention and leave it at that. The process received during this time, the further process that was available to him, and the fact that his detention was prolonged due to his decision to challenge his removal order must also be considered. 53 F.4th at 1208. The Ninth Circuit stated it was "important not to overstate the strength of Petitioner's showing under the first Mathews factor." 53 F.4th at 1213. This was so, according to the Ninth Circuit, because detentions longer than six months were considered "prolonged" in the context of detentions "for which no individualized bond hearings had taken place at all." In Rodriguez Diaz, the petitioner had received a bond hearing after he was detained. Id. at 1207. Here, like the petitioner in Rodriguez Diaz, Petitioner has received a bond hearing. The IJ determined Petitioner had not established he was not a danger to the public if released and denied release on bond. Thus, Petitioner received process during the detention period. The bond hearing, however, took place approximately 8 months ago. Petitioner has spent a prolonged period of time in detention since then, without any further inquiry into whether detention is still required. Thus, the first factor tends to weigh in favor of Petitioner.

As to the second factor, "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," Mathews, 424 U.S. at 335, the Court finds this factor also weighs in favor of Petitioner. The "risk of an erroneous deprivation of [a petitioner's] interest is high" where "[h]e has not received any bond or custody redetermination hearing[.]" Jimenez, 2020 WL 510347, at *3. Here, although Petitioner was previously provided a bond hearing, it was over eight months ago, and it is not clear when detention will end. Thus, the risk of erroneous deprivation weighs in favor of granting a second bond hearing.

In the third factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335. As previously discussed, the government has a strong interest in effecting removal. Demore, 538 U.S. at 531. As other courts have recognized, however, the key

government interest at stake here "is not the continued detention of Petitioner, but the government's ability to detain him without a bond hearing." Zagal-Alcaraz v. ICE Field Office Director, 2020 WL 1862254, at *7 (D. Or. 2020) (collecting cases).  Petitioner was provided a bond hearing over eight months ago. Providing another bond hearing would not undercut the government's asserted interest in effecting removal. Indeed, the purpose of a bond hearing is to inquire whether the alien presents a flight risk or danger to the community. See In re Guerra, 24 I.&N. Dec. 37 (B.I.A. 2006).  Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's." Zagal-Alcaraz, 2020 WL 1862254, *7 (quoting Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019)). The Court agrees with this analysis. Although the Government has a strong interest, it is outweighed by Petitioner's interest.

The three Mathews factors weigh in Petitioner's favor and outweigh the government's interest in further detention without inquiry into whether he currently presents a flight risk or danger to the community.  The Court thus finds that Petitioner's prolonged detention without a bond hearing before an IJ violates his Fifth Amendment due process rights.

In summary, Petitioner is entitled to a bond hearing under either § 1226(a) or § 1226(c).

**III.    ORDER**

The Clerk of Court is directed to randomly assign a District Judge to this case.

**IV.    RECOMMENDATION**

For the foregoing reasons, the Court RECOMMENDS that Respondent's motion to dismiss be DENIED, the petition be GRANTED, and Respondents be DIRECTED to provide Petitioner with a bond hearing before an immigration judge at which Respondents must justify Petitioner's continued detention by clear and convincing evidence.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within twenty-one (21) days after being served with a copy of this Findings and Recommendation, a party may file written objections with the Court and serve a copy on all parties. Id. The document should be

10

captioned, "Objections to Magistrate Judge's Findings and Recommendation" and shall not exceed fifteen (15) pages, except by leave of court with good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014).  This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated:    **January 16, 2026**              /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE

11